# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Appellate Court No. 09-35767

**TIMOTHY McCOLLOUGH,**

  Plaintiff-Appellee,

  vs.

**JOHNSON, RODENBURG & LAUINGER,**

  Defendant-Appellant.

### BRIEF OF PLAINTIFF-APPELLEE

On Appeal from the United States District Court
for the District of Montana, Billings Division,
United States Magistrate Judge Carolyn S. Ostby, Presiding

John Heenan                     Richard J. Rubin
Heenan Law Firm                 1300 Canyon Road
3970 Avenue D, Suite A          Santa Fe, New Mexico 87501
Billings, Montana 59102         (505) 983-4418
(406) 839-9091

Attorneys for Plaintiff-Appellee Timothy McCollough

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...iii

I.  STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION………………………………………………….………1

II. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW…………...2

III. STATEMENT OF THE CASE…………………………………………...4

IV. STATEMENT OF FACTS…………………………………………..8

V.  ARGUMENT OF LAW………………………………………………21

    A.  Summary of Argument…………………………………………21

    B.  The Lower Court Properly Entered Summary Judgment
        Establishing JRL's Liability for Violating the FDCPA………..……26

        1.  The Bona Fide Error Defense Does Not Excuse JRL's
            Intentional and Knowing FDCPA Violations………………...26

        2.  JRL's Reliance on CACV Was Unreasonable
            as a Matter of Law……………………………………...…………30

        3.  The Lower Court Correctly Entered Summary Judgment
            Against JRL For Submitting Request for Admission
            After It Had Conclusive Knowledge That the Debt
            Was Time-Barred…………………………………..……………34

        4.  JRL's Unlawful Attempt to Collect Attorney's Fees
            Establishes its Violation of the FDCPA…………….……….36

    C.  The Lower Court Properly Refused to Add to the Montana
        UTPA/CPA a Requirement of a Direct Contractual Relationship
        Between The Consumer and the Defendant…………………………44

i

    D.    JRL Has Shown No Abuse of Discretion, Legal Prejudice, or Error in the Trial Court's Evidentiary Rulings……………………46

        1.    The Trial Court Properly Admitted the Testimony of Mr. Lucero and Ms. Henan………………………………………..46

        2.    JRL Has Shown No Error in the Admission of the Testimony of The Two Non-Medical Experts and of Plaintiff's Ex. 106...49

            a.    The Evidence Was Relevant and Created No Undue Prejudice……………………………………………49

            b.    JRL Failed to Preserve its Claims of Evidentiary Error………………………………53

    E.    The Jury's Findings of Liability for Malicious Prosecution and Abuse of Process Are Supported by Substantial Evidence….....55

    F.    Substantial Evidence Supports the Jury's Full Award of Actual Damages………………………………………………………..60

        1.    JRL's Claim of a Heightened Montana Standard to Establish Emotional Distress Damages is Both Incorrect and Moot……60

        2.    The Trial Court Properly Refused to Disturb the Jury's Award………………………………………..63

CONCLUSION………………………………………………………...66

STATEMENT OF RELATED CASES………………………………...67

CERTIFICATE OF COMPLIANCE………………………………...67

CERTIFICATE OF SERVICE…………………………………………67

ADDENDUM…………………………………………...(Contained within brief)

SUPPLEMENTAL EXCERPTS OF RECORD…...…………….(Bound Separately)

# TABLE OF AUTHORITIES

## CASES

*Ammondson v. Northwestern Corp.*,
2009 MT 331, 353 Mont. 28, 220 P.3d 1 (2009)…………...……….62, 63

*Bailey v. U.S.*,
516 U.S. 137 (1995)…………………….………………………………….35

*Baird v. Norwest Bank*,
255 Mont. 317, 843 P.2d 327 (1993)………………………………………45

*Baker v. G.C. Services Corp.*,
677 F. 2d 775 (9th Cir. 1982)……………………………………………66

*Boyd v. City and County of San Francisco*,
576 F. 3d 938 (9th Cir. 2009)……………………………………………49

*Canady v. Wisenbaker Law Offices, P.C.*,
372 F. Supp. 2d 1379 (N.D.Ga. 2005)…………..………………………29

*Cappetta v. GC Services Ltd. Partnership*,
654 F. Supp. 2d 453 (E.D. Va. 2009)………………………………………61

*Clark v. Capital Credit & Collection Services, Inc.*,
460 F.3d 1162 (9th Cir. 2006)………….………………………………...38

*Delawder v. Platinum Financial Services Corp.*,
2007 WL 1245848 (S.D. Ohio April 27, 2007)……..…………………..41

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
95 F. 3d 1422 (9th Cir. 1996)……………….……………………...64

*Donohue v. Quick Collect, Inc.*,
592 F. 3d 1027 (9th Cir. 2010)…………..………………………………38

*Duffy v. Landberg*,
133 F. 3d 1120 (8th Cir. 1998)……………..………………………………37

*Edwards v. Niagara Credit Solutions, Inc*.,
 584 F. 3d 1350 (11th Cir. 2009)………..……………………………… 30, 43

*Elder v. David J. Gold, P.C*.,
 2009 WL 2580320 (W.D.N.Y. August 18, 2009)…………...………...28

*Fox v. Citicorp Credit Services, Inc.*,
 15 F.3d 1507 (9th Cir. 1994)……..……………………………………... 36

*Freyermuth v. Credit Bureau Services, Inc.*,
 248 F. 3d 767 (8th Cir. 2001)……………………………………………….27

*Gigli v. Palisades Collection, L.L.C.,*
 2008 WL 3853295 (M.D.Pa. August 14, 2008)…………..……………..42

*Gilbrook v. City of Westminster*,
 177 F. 3d 839 (9th Cir. 1999)……………………………………………….64

*Gravquick A/S v. Trimble Navigation Intern. Ltd*.,
 323 F. 3d 1219 (9th Cir. 2003)………………………..……………..29, 56, 61

*Harper v. City of Los Angeles,*
 533 F.3d 1010 (9th Cir. 2008)…………...……………………………….60

*Harrington v. CACV of Colorado, LLC,*
 508 F. Supp. 2d 128 (D. Mass. 2007)…………………………………...36

*Harvey v. Great Seneca Financial Corp.,*
 453 F. 3d 324 (6th Cir. 2006)………………………….…...40, 41, 42

*Hatfield v. Board of County Com'rs for Converse County*,
 52 F. 3d 858 (10th Cir. 1995)……………….…………………………32

*Heintz v. Jenkins*,
 514 U.S. 291 (1995)……………………………………………………..37

*Hepsen v. J.C. Christensen and Associates, Inc.*,
 2009 WL 3064865 (M.D.Fla. September 22, 2009)………..……………...33

iv

*Jacobsen v. Allstate Ins. Co.*,
  2009 MT 248, 351 Mont. 464, 215 P.3d 649 (2009)………..…………….....62

*John Q. Hammons Hotels, Inc. v. Acorn Window Systems, Inc.*,
  394 F. 3d 607 (8th Cir. 2005)………………………………………………….58

*Johnson v. Hale*,
  13 F. 3d 1351 (9th Cir. 1994)…………..…………………………………...62

*Johnson v. Riddle*,
  443 F. 3d 723 (10th Cir. 2006)…………………………...…………….…..27, 33

*Johnson v. Supersave Mkts.*,
  211 Mont. 465, 686 P.2d 209 (1984)……………………………………61

*Keenan v. Allan*,
  91 F. 3d 1275 (9th Cir. 1996)…………..………………………………...30

*Kimber v. Federal Financial Corp.*,
  668 F. Supp. 1480 (M.D.Ala. 1987)…………………………...…….26, 36

*Lum v. City and County of Honolulu*,
  963 F.2d 1167 (9th Cir.1992)………………………………...……..55

*Maddox v. City of Los Angeles*,
  792 F.2d 1408 (9th Cir. 1986)…………………..………………………..53

*MBIA Ins. Corp v. Royal Indem. Co.*,
  426 F. 3d 204 (3d Cir. 2005)……………………………………………….32

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988)…………………………………………..54

*Molski v. Evergreen Dynasty Corp.*,
  500 F. 3d 1047 (9th Cir. 2007)..............................................44, 61

*Nelson v. Equifax Information Services, LLC*,
  522 F. Supp. 2d 1222 (C.D.Cal. 2007)…………………………………..61

*Ohler v. U.S.,*
     529 U.S. 753 (2000)………………………….………………………….55

*Orr v. Bank of America, NT &SA,*
     285 F. 3d 764 (9th Cir. 2002)……………………………...…………39, 40

*Passantino v. Johnson & Johnson Consumer Prods., Inc.,*
     212 F.3d 493 (9th Cir. 2000)…………………………………………..61

*Pavao v. Pagay,*
     307 F.3d 915 (9th Cir. 2002)…………………………………………..59

*Reichert v. National Credit Systems, Inc.,*
     531 F. 3d 1002 (9th Cir. 2008)………………………………………...*passim*

*Rowe v. Educational Credit Management Corp.,*
     559 F. 3d 1028 (9th Cir. 2009)……………..…………………………37

*Ruth v. Triumph Partnerships,*
     577 F.3d 790 (7th Cir. 2009)…………………………………………..32

*Salmeron v. Highlands Ford Sales, Inc.,*
     220 F.R.D. 667 (D.N.M. 2003)…………………………………………50

*Seipel v. Olympic Coast Investments,*
     2008 MT 237, 344 Mont. 415, 188 P.3d 1027 (2008)……………………..57

*Seltzer v. Morton,*
     2007 MT 62, 336 Mont. 225, 154 P.3d 561 (2007)………………………..65

*Seymour v. Summa Vista Cinema, Inc.,*
     809 F.2d 1385 (9th Cir. 1987)………..…………………………………..29

*Smith v. Law Offices of Mitchell N. Kay,*
     124 B.R. 185 (D.Del. 1991)…………………….………………………60

*Sprinkle v. SB&C Ltd.,*
     472 F. Supp. 2d 1235 (W.D. Wash. 2006)……………………….………...29

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)………………………………………………………..50

*Teng v. Metropolitan Retail Recovery Inc.*
851 F. Supp. 61 (E.D.N.Y. 1994)………………………..…………………60

*Thompson v. Crown Asset Management, LLC*,
2009 WL 3059123 (D. Ariz. September 23, 2009)……..…………………29

*Thompson v. D.A.N. Joint Venture III*,
L.P., 2007 WL 1625926 (M.D.Ala. June 5, 2007)…………………………28

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
768 F.2d 1001 (9th Cir. 1985)…………..……………………………………..59

*U.S. v. Archdale*,
229 F. 3d 861 (9th Cir. 2000)…………………………………………………54

*U.S. v. Curtin*,
489 F.3d 935 (9th Cir. 2007)……………………………………………50, 52

*U.S. v. Decoud*,
456 F. 3d 996 (9th Cir. 2006)…………………..……………………………...55

*U.S. v. McInnis*,
976 F.2d 1226 (9th Cir. 1992)…………….…..……………………………..53

*Valencia v. Affiliated Group, Inc.*,
2008 WL 4372895 (S.D.Fla. September 24, 2008)……..…………………33

*Wilhelm v. Credico, Inc.*,
519 F. 3d 416 (8th Cir. 2008)………………………………………………33

*Williams v. Javitch, Block & Rathbone, LLP*,
480 F. Supp. 2d 1016 (S.D. Ohio 2007)………………………………………42

*Zhang v. American Gem Sefooods*,
339 F.3d 1020 (9th Cir. 2003)…………..…………………………………..61

## STATUTES

Fair Debt Collection Practices Act,
   15 U.S.C. §§ 1692-1692o…………………………………...…...……. *passim*

Montana Unfair Trade Practices and Consumer Protection Act,
   Mont. Code Ann. § 30-14-101 et seq………………………………… *passim*

28 U.S.C. § 1292(b)………………………………………………………...2

28 U.S.C. § 1331……………………………………………………………...1

28 U.S.C. § 1367…………………………...……………………………………1

## RULES

F.R.Civ. P. 56(e)……………...……………………………………………39

Fed.R.Evid. 401………...……………………………………………………52

Fed.R.Evid. 402………………………………………………………...52

Fed.R.Evid. 403..……………………………………………………………52

Fed.R.Evid. 404...............................................................................................50, 52

## OTHER AUTHORITIES

Am. Jur. Corporations § 1432………………………...…………………………..29

FTC Staff Commentary on the Fair Debt Collection Practices Act,
   53 Fed. Reg. 50097-50110 (Dec. 13, 1988)………………………...…60

Restatement (Second) of Agency § 9(3)………………………………………..58

# I. STATEMENT OF SUBJECT MATTER
# AND APPELLATE JURISDICTION

Plaintiff-Appellee Timothy McCollough (hereinafter "Mr. McCollough") brought this case pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o ("FDCPA"). (Dk. 23, ER 12).[1] Mr. McCollough also asserted supplemental state claims alleging malicious prosecution, abuse of process, and violations of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101 et seq. ("Montana UTPA/CPA"). *Id.* Jurisdiction in the District Court was conferred by the FDCPA, 15 U.S.C. § 1692k(d), and by 28 U.S.C. §§ 1331 and 1367.

After the jury rendered its verdict in favor of Mr. McCollough, judgment entered on June 3, 2009. (Dk. 184, ER 8). Defendant-Appellant Johnson, Rodenburg & Lauinger (hereinafter "JRL") filed its Rule 50 and 59 Motion for New Trial and to Amend Judgment on June 17, 2009. (Dk. 186,

---

[1] Record references in this brief list the Civil Docket Number from the court below as "Dk. __" and the corresponding tab in Appellant's three volume Excerpts of Record as "ER __" for the documents so reproduced. As noted below, Mr. McCollough has included in the Addendum an additional Order omitted from Appellant's Excerpts of Record and, in light of Appellant's challenge that the jury verdict is not supported by substantial evidence, four additional volumes of supplemental Excerpts of Record containing the entire trial transcript (ER IV, V, and VI comprised of Dks. 195, 196, and 197) and transcripts of the video deposition testimony used at trial and all trial exhibits (ER VII).

ER 35). On July 27, 2009, the trial court denied the Motion in its entirety.

(Dk. 203, ER 9). On August 19, 2009, JRL filed its Notice of Appeal. (Dk.

204, ER 37). This Court has jurisdiction pursuant to 28 U.S.C. § 1292(b).

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Whether the trial court properly rejected JRL's putative bona fide

error (BFE) defense because JRL continued to prosecute the time-barred

collection lawsuit after it unequivocally knew that the statute of limitations

had expired.

2) Whether the trial court correctly held that JRL's reliance on its

client's erroneous payment information was unreasonable as a matter of law

when the client had disclaimed "the accuracy or validity of data provided,"

JRL had agreed that it was "responsible to determine [its] legal and ethical

ability to collect" the account, JRL had previously experienced "problems"

with other accounts in the same "batch" received from the client, and at the

time JRL had evidence in its file that the specific payment information was

indeed false.

3) Whether the trial court properly entered summary judgment against

JRL under the FDCPA's strict liability standards for seeking in the

underlying collection lawsuit attorney's fees that were impermissible under applicable state law and not authorized by a contract creating the debt.

4) Whether the trial court properly refused JRL's request to create an additional requirement, not in the plain language of the statute, that a defendant subject to the Montana UTPA/CPA must itself be a party to the qualifying consumer contractual relationship.

5) Whether JRL may challenge on appeal the admissibility of the testimony provided by Mr. McCollough's two non-medical expert witnesses when its only objection to that testimony was made in a motion in limine that the trial court denied with leave to renew at trial.

6) Whether the trial court acted within the sound exercise of its discretion by admitting evidence which negated the claims of mistake and nonculpability on which JRL based its defense and which established elements of Mr. McCollough's case.

7) Whether the jury's verdict finding JRL liable for abuse of process and malicious prosecution is supported by substantial evidence.

8) Whether Mr. McCollough's own testimony plus the evidence provided by his medical expert were sufficient to constitute substantial evidence to sustain the jury's award of emotional distress damages.

## III. STATEMENT OF THE CASE

Mr. McCollough sued JRL, a debt collection law firm, for its alleged violations of the FDCPA and for the supplemental state claims of malicious prosecution, abuse of process, and violation of the Montana UTPA/CPA because JRL sued Mr. McCollough on a time-barred debt and sought attorney's fees to which it had no legal right. (Dk. 23, ER 12). The case was assigned to the Honorable Carolyn S. Ostby, United States Magistrate Judge, by consent of the parties. (Dk. 14).[2]

On cross motions for summary judgment, the trial court reached the following legal conclusions:

a) pursuant to Rule 56(d)(1), the court determined that the following material facts were established:

1) On April 17, 2007, JRL filed a time-barred lawsuit against McCollough;

2) By August 6, 2007, JRL had information from its client demonstrating that the lawsuit was time-barred; and

3) JRL prosecuted the time-barred lawsuit against McCollough until December 7, 2007;

---

[2] Early in the litigation the claims asserted by Mr. McCollough against JRL's co-defendant, its client CACV of Colorado, LLC (hereinafter "CACV"), were settled and dismissed. (Dk. 5). In addition, the claims of a co-plaintiff, Ms. June Tift, were also voluntarily dismissed and are no longer involved in this case. (Dk. 42, ER 17).

b) JRL violated the FDCPA by filing and maintaining the time-barred

collection suit and failed to meet its burden to establish the FDCPA

bona fide error defense to that violation;

c) JRL violated the FDCPA by seeking to collect attorney's fees to

which it had no legal right; and

d) JRL was subject to the Montana UTPA/CPA even though it was

not a party to the underlying consumer contractual relationship.

(Dk. 75, ER 1, and Dk. 96, ER 2).

The court also denied JRL's summary judgment motion as to the abuse of

process and malicious prosecution counts, holding that both claims raised

factual issues for the jury. (Dk. 96, ER 2).

The trial court entered two pre-trial rulings on JRL's motions in

limine. In its first ruling, the court denied JRL's motion to exclude Mr.

McCollough's non-medical expert witnesses "with leave to renew any

objections at trial." (Dk. 132). In the same Order, the court deferred ruling

on the remaining issues until it conducted a hearing at the pre-trial

conference. *Id*. [This Dk. 132 Order, dated April 1, 2009, omitted from JRL

Excerpts of Record, is reproduced in the attached Addendum.]

Following that hearing, the court rejected JRL's request to bar all

evidence that "JRL and/or its attorneys have filed other debt collection

lawsuits or evidence about those lawsuits." (Dk. 138, ER 3). The court also denied JRL's motion to exclude testimony from Mr. Ken Lucero and Ms. Keri Henan, two other consumer debtors who would testify regarding JRL's filing of collection suits against them. *Id*. In this regard, the court cautioned that the evidence actually introduced must be based on personal knowledge and limited so as "not…to allow the case to get sidetracked on the case of others." (Pretrial conference transcript, Dk. 194, ER 4, at 7-9, 13).

The case was then tried to a jury over the course of three days. (Transcripts Vols. I-III, ER IV-VI, and video deposition transcripts and trial exhibits, ER VII). At the close of the presentation of Mr. McCollough's case, JRL moved for judgment as a matter of law, claiming insufficient evidence to support all claims and damages; that motion was denied. (Transcript Vol. II, ER V, at 229-35).

The jury returned its verdict in favor of Mr. McCollough on all issues, finding JRL liable on the malicious prosecution, abuse of process, and Montana UTPA/CPA claims, awarding actual damages of $250,000 and FDCPA statutory damages of the maximum $1,000, and finding by clear and convincing evidence that punitive damages should be awarded. (Transcript Vol. III, ER VI, at 91-93). The jury then heard further evidence on punitive

damages, received an additional punitive damage instruction, and returned a verdict awarding $60,000 in punitive damages.  (*Id*. at 101-18).

The trial court resolved several remaining items prior to entering judgment.  It exercised its discretion under the Montana UTPA/CPA not to treble the jury's award of actual damages; it offset the jury's damage award by the $10,000 that Mr. McCollough received in his settlement with JRL's client, CACV; and it awarded Mr. McCollough the full amount of attorney's fees requested plus costs in the total amount of $107,770.17.  (Dk. 183, ER 7).  In addition, the court conducted the punitive damage review mandated by Montana law, considered each of the required nine factors, and reaffirmed the jury's $60,000 award.  *Id*.  Judgment for the $301,000 in damages and $107,770.17 in fees and costs then entered.  (Dk. 184, ER 8).

JRL filed its Rule 50 and 59 Motion for New Trial and to Amend Judgment (Dk. 186, ER 35), which the trial court denied in all respects.  (Dk. 203, ER 9).  On August 19, 2009, JRL filed its Notice of Appeal.  (Dk. 204, ER 37).

# IV. STATEMENT OF THE FACTS

Mr. McCollough is an unemployed, disabled, former school custodian who has not worked since 1990 when he was attacked at work by an unknown assailant and suffered traumatic brain injury. (Transcript Vol. II, ER V, at 129, 168-170). He initially received worker's compensation benefits following the attack and since then has received social security disability benefits as his sole current income. (*Id*. at 181-82, and ER VII, Plaintiff's Ex. 3-1).

Mr. McCollough opened a credit card account with Chemical Bank years ago while he was still employed. (*Id*. at 206). Chemical Bank was later acquired by Chase Manhattan Bank; Mr. McCollough continued to make purchases on the account using a Chase credit card. (*Id*. at 206, 211). While employed and until his injury, Mr. McCollough and his wife were paying all of their credit card bills on time; after the injury, they began incurring debt for basic needs, such as buying groceries, and later in the 1990's to pay medical expenses when his wife underwent surgery. (*Id*. at 183-84).

By 1999 Mr. McCollough and his wife had paid off all of their debts except Chase. (*Id*. at 184-90). Despite their financial and medical circumstances, Mr. and Mrs. McCollough were able to work with their other

creditors and made certain that each of them was paid because, as Mr.

McCollough testified, "It was the right thing" to do. (*Id*.) Chase, however,

refused to work with the McColloughs, imposed 40% interest on the debt,

and turned the account over to collectors who "called around the clock,"

"insulted me," and "used horrible language." (*Id*.) Even then, Mr.

McCollough over the years paid Chase back all of the money that he had

borrowed plus some of the interest, though admittedly an unpaid balance of

some $3,000 remained when he stopped making payments in 1999. (*Id*. at

188, 190, 210). On October 25, 2000, Chase charged off the account on its

books, and no further payments were made. (ER VII, Plaintiff's Exs. 10-1

102-1).

On October 17, 2002, CACV, a company whose business is buying

debts, purchased the Chase account. (Transcript Vol. I, ER IV, at 115, and

ER VII, Plaintiff's Ex. 111-1). CACV had prepared a collection complaint

and summons on February 19, 2003, and a week later "Forwarded to

Accounting" court costs and fees. (ER VII, Plaintiff's Ex. 111-8 and 9). On

June 28, 2004, CACV asked to have the court costs returned, and on June

30, 2004, the "unused costs" were in fact returned. (*Id.* at 111-8).

In 2005 CACV, represented by Montana attorney Bruce Spencer, sued

Mr. McCollough for $3,816.80 in Justice Court. (ER VII, Plaintiff's Ex. 1).

9

Mr. McCollough acting pro se answered, stating, inter alia, that "statute of limitations is up;" two weeks later Mr. Spencer dismissed the case. (*Id.*) The fact that Mr. McCollough had been sued and that he answered asserting that the statute of limitations had expired was duly noted in the paperless file that CACV later sent to JRL. (ER VII, Plaintiff's Ex. 111-10).

On December 18, 2006, JRL began its involvement when it accepted CACV's placement of Mr. McCollough's account for collection. (ER VII, Plaintiff's Ex. 67-1). This placement was accomplished through an individualized contract that contained the following disclaimer: "Collect America makes no warranty as to the accuracy or validity of data provided." (*Id.*) In addition, the contract expressly made JRL "responsible to determine your legal and ethical ability to collect" the account. (*Id.*) [3]

JRL immediately recognized and recorded in the paperless file on January 5, 2007, that this debt was part of "THE COLLECT AMERICA BATCH THAT WE ARE HAVING PROBLEMS W[ITH]." (ER VII, Plaintiff Ex. 111-2). In fact, a JRL account manager realized during that initial processing that the debt was time-barred, wrote to CACV explaining that "it appears that the Statute of Limitations has expired on this file," and

---

[3] Collect America and CACV are overlapping related entities, with Collect America acting as the servicer for CACV. (ER VII, Dunker video deposition transcript, at 34-35, and Plaintiff's Ex. 103-1).

requested CACV to "provide us with an instrument in writing [so that] we may be able to extend the Statute of Limitations." (ER VII, Defendant's Ex. 501-01).

CACV wrote in response an email to attorney Lisa Lauinger, entitled "sol extended," stating that Mr. McCollough had made a $75 partial payment on June 30, 2004, and asked, "Do you need any of this info from me on this one?" (ER VII, Defendant's Ex. 502-01). Ms. Lauinger did not respond to CACV's invitation to provide additional information, did not question or ask for verification that the statute of limitations had been extended by the crucial partial payment, and did nothing further in this regard. (ER VII, Defendant's Ex. 503-01). Nor did Ms. Lauinger notice that her own paperless file contained the June 30, 2004 entry, which omitted any reference to a partial payment having been made and instead showed on that date the correct "RETURNED UNUSED COSTS" notation. (ER VII, Plaintiff's Ex. 111-8).

On April 17, 2007, JRL filed the collection complaint against Mr. McCollough in Montana District Court. (ER VII, Plaintiff's Exs. 2-1 and 111-14). The complaint, signed by JRL attorney Charles Dendy, sought judgment for the alleged account balance of $3,816.80, interest of $5,536.81, and attorney's fees of $481.68. (*Id.*)

Mr. Dendy, the Montana-licensed JRL attorney, swore that before filing suit he had reviewed the information in the paperless file, which included the crucial June 30, 2004 entry. (ER VII, Dendy video deposition transcript, at 6, 11-18; Transcript Vol. II, ER VI, at 277). He admitted that he made no inquiry or did not otherwise act on the information. (*Id.*)

Mr. Dendy also admitted that he did not notice in the paperless file the entries showing that CACV had sued Mr. McCollough previously or the fact that that suit had been dismissed after Mr. McCollough had pled the statute of limitations defense since if he had, he testified that he would have wanted to make a follow up inquiry of the previous attorney. (Transcript Vol. II, ER VI, at 275-76). JRL and Mr. Dendy still had no independent supporting documentation or information from Chase or from anyone else; and notwithstanding CACV's disclaimers and the problems already identified in this Collect America batch of accounts, Mr. Dendy repeatedly explained, "In this case I relied upon the information that was provided by the client;" "We rely on the representations of our client;" and "We file lawsuits based upon the representations of the client." (*Id.* at 11, 14.)

On June 13, 2007, McCollough filed pro se his handwritten Answer in the District Court, asserting, inter alia, his statute of limitations affirmative defense:

ANSWER

FORGIVE MY SPELLING I HAVE A HEAD INJURY
AND WRITING DOSE NOT COME EASY

① THE STACUT OF LIMITACION'S IS UP,
I HAVE NOT HAD ANY DEALINGS WITH ANY CREITED
CARD IN WELL OVER 8½ YEARS

② I AM DISABILED I GET 736.00 A MOUNTH  S.S.I.
MY MORGAGE IS 724.00 A MOUNTH, I'M NOW
A DIOBEDIC I HAVE NO MONEY NO INCHURANCE
BUT MEDICARE

6-13-07    MJm McCollough

(ER VII, Plaintiff's Ex. 3). The entire handwritten Answer is transcribed in
the record at Dk. 39, ER 16, at 4.

A telephonic scheduling conference was held in the collection case on
July 11, 2007. (ER VII, Plaintiff's Ex. 111-16 and 17). Neither JRL nor the
court clerk could reach Mr. McCollough, and the conference was held
without him. (*Id.*) The next day, on July 12, Mr. McCollough telephoned
Mr. Dendy and left a message that he would be seeking summary judgment
on the statute of limitations issue. (Entry by CD [Charles Dendy], Ex. 111-
17).

Mr. Dendy noted in his entry in the paperless file after the scheduling
conference, "We need to get what the client has for docs on hand." (*Id.*)
The following day account manager Lauinger sent an email to CACV asking
for "a copy of the application, charge off statement and other statements plus

13

affidavit if available." (ER VII, Plaintiff's Ex. 10-2).[4] Three days later, two July 16 entries in the paperless file recorded "no other docs available" and "additional statements not available due to age of account." (ER VII, Plaintiff's Ex. 111-17).

On August 3 account manager Lauinger sent CACV an email referencing the purported June 30, 2004, $75 payment and asked CACV "to make sure that there is nothing else for a payment on this file." (ER VII, Plaintiff's Ex. 10-1). Three days later, on August 6, 2007, CACV disclosed the error in the earlier CACV email to attorney Lauinger and stated that the June 30, 2004, entry "was actually unused costs by another office, not payment." (*Id*.) Account manager Lauinger testified that she understood that CACV had now confirmed that the crucial June 30, 2004, event was "not payment from the debtor" and that she accordingly scanned this email and made it part of the paperless file where Mr. Dendy had access to it. (ER VII, Grace Lauinger video deposition transcript, at 61-63).

The fact that this June 30, 2004, activity was not Mr. McCollough's payment and was instead costs returned unused from an earlier lawsuit was in the paperless file and thus had been in JRL's possession all along. (Transcript Vol. II, ER V, at 273-74). Still, even when it had received this

---

[4] To clarify, this account manager, Grace Lauinger, is the mother of JRL attorney and partner Lisa Lauinger. (Transcript Vol. I, ER IV, at 118).

explicit and targeted confirmation that no partial payment had been made and that the statute of limitations had not been extended or revived, JRL did not dismiss the collection suit but actively prosecuted it over the following four months.  (Dk. 75, ER 1, at 4).

On October 31, 2007, Mr. Dendy served on Mr. McCollough a list of 22 requests for admission that, if admitted, would establish all elements of the case against him and waive all defenses.   (ER VII, Plaintiff's Ex. 4). Included among these requests was No. 21, which stated: "Defendant Timothy M. Mccollough made a payment on said Chase Manhattan Bank credit card account on or about June 30, 2004 in the amount of $75.00." (*Id*.)  Nos. 14 and 17 also sought admissions that: "There are no facts upon which Defendant Timothy M. Mccollough relies as a basis for any defense in this action;" and "Every statement or allegation contained in plaintiff's Complaint is true and correct."  (*Id*.)  In addition, request Nos. 1, 2, 18, and 19 each referenced "attached documents" (*id*.), yet no documents were in fact attached.  (ER VII, Defendant's Ex. 511).  After receiving the requests for admission, Mr. McCollough retained counsel, who timely denied all of the requests.  (*Id*.)

Continuing to prosecute the collection case, on November 14, 2007, Mr. Dendy issued a subpoena duces tecum to Chase seeking production of

the operative records from Mr. McCollough's account.  (ER VII, Plaintiff's

Ex. 14-1).  Chase responded a month later stating that it had no records of

the account.  (*Id*. at 14-2).

On December 7, 2007, Mr. Dendy sent to CACV a lengthy email

marked "URGENT."  (ER VII, Plaintiff's Ex. 13-1).  Mr. Dendy explained

that Mr. McCollough was now represented by an attorney who "has served

discovery requests" and could be expected to vigorously defend the

collection suit; as a result Mr. Dendy asked for special attention, including

that CACV provide complete documentation from Chase and "not just the

things that you normally request."  (*Id*.)  That afternoon, CACV instructed

Mr. Dendy to dismiss the suit "asap" because of the "SOL problem."  (ER

VII, Plaintiff's Ex. 111-20 and 21).  JRL then dismissed the collection case

with prejudice.  (*Id*. at 111-22; ER VII, Defendant's Exs. 512 and 513).

Mr. McCollough filed this case to redress JRL's "abusive, unfair,

harassing and unlawful debt collection and litigation activity."  (Dk. 1, ER

10).  As summarized above, the trial court entered partial summary judgment

for Mr. McCollough on JRL's FDCPA violations.  (Dk. 75, ER 1; Dk. 96,

ER 2).  In addition to finding JRL liable for filing and intentionally

continuing to prosecute the known time-barred collection suit, the trial court

also ruled that JRL's attempt to collect attorney's fees for which there was

no legal entitlement also violated the FDCPA: the lower court applied the Montana rule that such fees are available only if allowed by a contract and imposed liability since JRL failed to produce any evidence whatsoever of such an agreement.   (Dk. 75, ER 1, at 15-18).

At trial JRL defended on the basis that it simply made a series of mistakes in prosecuting the time-barred lawsuit.  (Defendant's Voir Dire and Opening Statement, Transcript Vol. I, ER IV, at 72, 75, 123, 127, 129; Defendant's Closing Argument, Transcript Vol. III, ER VI, at 72).   JRL told the jury that requesting attorney's fees in the collection suit was also "a mistake" because Mr. Dendy "should have had" a copy of "the credit card agreement in his file when he filed the lawsuit."  (Defendant's Opening Statement, Transcript Vol. I, ER IV, at 128-29).   The evidence at trial, however, showed that there was no possible mistake since, rather than representing an aberration or an oversight, JRL's failure to have a contract before suing Mr. McCollough was consistent with its usual practice to have no documentation at all before filing suit.  (ER VII, Dunker video deposition transcript, at 50, and Dendy video deposition transcript, at 14; Transcript Vol. II, ER VI, at 271).   The jury rejected JRL's story of a mere mistake and found by clear and convincing evidence that JRL misconduct was malicious. (Jury Instructions and Verdict, Transcript Vol. III, ER VI, at 86-87, 92.)

JRL's other jury theme was its "deadbeat" defense that Mr. McCollough did not pay his debts, did not suffer any damages as a result of its misconduct, and any damages that he did suffer were his own fault. (Dk. 138, ER 3, at 3, par. 5; Plaintiff's Motion in Limine and supporting memorandum, Dks. 102 and 103, at 7; Defendant's Opening Statement, Transcript Vol. I, ER IV, at 127, 129-30; Defendant's cross examinations of Mr. Patten, Dr. Veraldi, and Mr. McCollough, Transcript Vol. II, ER V, at 115, 149-153, 210, 218-19). In closing argument JRL repeatedly attacked Mr. McCollough for not paying the Chase debt and thereby causing his own damages:

> Mr. McCullough didn't pay his credit card. We all know that. He doesn't dispute it. He owed it. There is no dispute. The money was green when he spent it. He didn't pay it back.
>
> My client is not responsible for that. If Mr. McCullough paid his credit card bill to Chase Manhattan, we wouldn't be here this morning. We wouldn't have been here this week. He got out of paying his bill and now he wants you to award him for it.

(Defendant's Closing Argument, Transcript Vol. III, ER VI, at 48-49; *see also Id*. at 53 and 69).

The jury rejected that defense tactic and instead credited Mr. McCollough and the expert psychologist, Dr. Veraldi, both of whom testified extensively as to his pre-existing condition and the nature and cause of his current damages. (Transcript Vol. II, ER V, at 123-220). Dr. Veraldi

18

provided detailed and specific testimony about Mr. McCollough's condition after he suffered his head injury in 1990 and about his mixed personality disorder and multiple other diagnoses, including posttraumatic stress disorder. (*Id*. at 126-42). Mr. McCollough testified as to the adverse impact of being sued by JRL, including the anxiety, stress, and anger that he felt and the "down time" and severe headaches that he suffered. (*Id*. at 195-209). Mr. McCollough acknowledged his disabling pre-existing condition but characterized the impact of JRL's lawsuit on him as "the straw that broke the camel's back." (*Id*. at 209). Dr. Veraldi testified that Mr. McCollough is "somebody who is a more vulnerable individual in negotiating the world," and thus "more vulnerable to any types of problems," and explained why the adverse impacts of JRL's lawsuit worsened his existing symptoms. (*Id*. at 142-46).

In light of Mr. McCollough's pre-existing condition and in accordance with the applicable Montana pattern instruction (M.P.I.2d 25.10), the trial court instructed the jury that any "compensation for mental or emotional distress caused by the defendant's conduct" that may be awarded "should not be reduced simply because the plaintiff was more susceptible to injury than a normally healthy person." (Transcript Vol. III, ER VI, at 86). The jury rejected JRL's "deadbeat" defense and awarded Mr. McCollough

$250,000 to compensate him for the emotional distress that JRL caused him. (*Id*. at 92).

The jury also found for Mr. McCollough on the Montana UTPA/CPA claim and determined that JRL was liable for malicious prosecution and abuse of process. (*Id*.). Following its finding of malice, the jury again deliberated and awarded $60,000 in punitive damages. (*Id*. at 118). The trial court reaffirmed the punitive damage award in the independent review mandated by Montana law, exercised its discretion under the Montana UTPA/CPA not to treble the jury's award of actual damages, offset the jury's damage award by the $10,000 that Mr. McCollough received in his settlement with CACV, and awarded Mr. McCollough attorney's fees and costs. (Dk. 183, ER 7). After judgment was entered, the court denied JRL's Rule 50 and 59 Motion for New Trial and to Amend Judgment, concluding the proceedings below. (Dk. 186, ER 35).

# V. ARGUMENT OF LAW

## A.     Summary of Argument

## The Lower Court Properly Entered Summary Judgment Establishing JRL's FDCPA Liability

JRL does not dispute that that it violated the FDCPA by filing and maintaining a time-barred lawsuit against Mr. McCollough.  It argues only that the lower court erred by rejecting its bona fide error (BFE) defense to that violation.

The lower court applied the rule that the BFE defense is not available when a debt collector continues to engage in unlawful activity after it has actual notice of its illegality.  The relevant jurisprudence holds that such persistence constitutes intentional wrongdoing that the BFE defense does not excuse and converts what may have originally been a mistake or an unintentional act into a willful violation.  Here, the uncontroverted evidence shows that JRL continued even more aggressively to prosecute the collection litigation for four months after it knew for certain that the suit was time-barred.  JRL has ignored this primary basis on which the lower court ruled and thus has conceded this aspect of the appeal.

JRL instead asserts an insubstantial argument focused solely on its reliance, when it initially filed the collection lawsuit, on CACV's erroneous representation that the statute of limitations had been extended by a $75

partial payment.  JRL's reliance, however, was categorically unreasonable under *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002 (9th Cir. 2008), where this Court held that a collector cannot establish the BFE defense just by relying on its referring client even when the client had provided accurate information in the past.  Here, JRL makes no claim that CACV was reliable and cannot do so since, unlike in *Reichert,* JRL had already found "problems" with the batch of CACV debts containing Mr. McCollough's account.  In addition, the CACV/JRL placement contract made any reliance on CACV unreasonable as a matter of law since it expressly disclaimed the accuracy of CACV's data.   JRL cannot present even the inadequate case that this Court rejected in *Reichert*.

Regarding the other FDCPA summary judgment holding, JRL does not claim that its attempt to collect attorney's fees from Mr. McCollough was authorized by law or contract, and thus it effectively admits the propriety of that ruling.  JRL simply argues that it had a reasonable basis to assume when it filed the collection suit that it might be able to prove such an entitlement to fees.  That mere belief is immaterial, however, and is no defense where, as here, the attorneys fees sought to be collected were not authorized by law or contract.

**The Montana UTPA/CPA Does Not Require that the Events Here Flow From a Contractual Relationship Between Mr. McCollough and JRL**

JRL asserts that the Montana UTPA/CPA cannot apply because it and Mr. McCollough were never in a contractual relationship. However, Montana law imposes no such requirement, as the lower court ruled. A qualifying consumer transaction is indeed a prerequisite to Montana UTPA/CPA coverage, but neither the plain language of the statute nor Montana caselaw requires that the underlying contract involve the subject defendant. JRL's attempt to engraft onto the Montana UTPA/CPA an additional element omitted by the Montana legislature is unavailing.

**JRL Has No Basis to Attack the Trial Court's Evidentiary Rulings**

JRL complains that the trial court abused its discretion by admitting evidence that JRL filed other consumer collection lawsuits and by doing so without "protective safeguards." JRL's complaints must be rejected since all of the evidence was relevant and admissible, none was legally prejudicial, JRL withdrew or failed to preserve key objections, and in any event JRL never proffered the limiting or clarifying jury instruction or any other "protective safeguards" against supposed "misuse by the jury" as it needed to have done to preserve the issue for appeal.

23

The trial court exercised sound discretion when it admitted evidence of the manner in which JRL conducted its business in order to negate JRL's own claims of mistake and to establish culpability, as Mr. McCollough had to do in order to prevail on his state tort claims and prove FDCPA statutory damages. The only prejudice that JRL suffered from admission of this evidence was to prevent it from deceiving the jury into believing that its misconduct was, as it consistently protested, innocent – that is, JRL suffered no legal or undue prejudice at all.

JRL attacks the testimony of Mr. McCollough's two non-medical experts without having preserved its objection. In response to JRL's motion in limine, the lower court entered a short Order that generally reviewed topics where their testimony might be relevant or irrelevant, withheld any explicit and definitive ruling as to admissibility, and merely denied the motion "with leave for JRL to renew any objections at trial." JRL failed to renew the objections at trial and pursuant to Circuit precedent cannot now raise the issue on appeal.

## The Jury's Findings of Liability for Malicious Prosecution and Abuse of Process Are Supported by Substantial Evidence

JRL's claim that the malicious prosecution and abuse of process decisions are not supported by substantial evidence fails upon review of the

evidence in light of the jury's verdict.  To accept JRL's characterization of the events and its related arguments in the face of the overwhelming evidence supporting the verdict would deny the jury its role to adjudicate the controverted facts.

Remarkably, JRL still continues to argue that its collection litigation abuses were nothing more than a mistake.  The evidence, however, demonstrates that JRL filed the collection suit without probable cause, both as to the statute of limitations abuse as well as the baseless claim for attorney's fees that forms an independent ground to sustain the jury's verdict.  The same evidence that proves the absence of mistake supports the jury's finding of malice as required to sustain either of the tort claims.

## The Jury's Award of Emotional Distress Damages is Supported by Substantial Evidence

Finally, JRL argues an absence of substantial evidence to support what it claims is a heightened Montana standard to establish emotional distress damages.  However, JRL has failed to challenge the emotional distress award as to FDCPA actual damages, which therefore must be affirmed. Duplicative actual damages are of course prohibited, and this Court therefore has no need to decide the putative Montana heightened standard issue.

25

Still, JRL can identify no error. The Montana Supreme Court has expressly overruled JRL's claimed heightened emotional distress standard, thus eliminating JRL's argument from any consideration here. In any event, JRL's position is nothing more than an attack on Mr. McCollough's credibility and a restatement of its belief that any current damages are mere vestiges of his pre-existing injuries. These assertions are foreclosed by the jury's decision.

**B.** **The Lower Court Properly Entered Summary Judgment Establishing JRL's Liability for Violating the FDCPA**

    **1.** **The Bona Fide Error Defense Does Not Excuse JRL's Intentional and Knowing FDCPA Violations**

JRL "does not dispute the district court's findings that, under the strict liability standard of the FDCPA, JRL violated the FDCPA by filing and maintaining a time-barred lawsuit against McCollough, regardless of whether it was unintentional." (Appellant's Brief, at 20). This concession reflects the unanimous line of federal cases, beginning with *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1487- 89 (M.D.Ala. 1987), holding that suing or threatening to sue on a known time-barred debt is a deceptive and unfair practice prohibited by 15 U.S.C. §§ 1692e and 1692f.

*See e.g.*, *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th

Cir. 2001), and cases cited therein.

JRL can avoid liability here only under the "narrow exception" of the

BFE defense.  *Reichert*, 531 F.3d at 1005.  The BFE defense states:

> A debt collector may not be held liable in any action brought under
> this subchapter if the debt collector shows by a preponderance of
> evidence that the violation was not intentional and resulted from a
> bona fide error notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

The debt collector has the burden to prove all four components of the

defense. *Reichert*, 531 F.3d at 1006.  First, it must show that 1) the violation

was not intentional and 2) resulted from a bona fide error; in addition, "the

procedures component of the bona fide error defense involves a two-step

inquiry: first, whether the debt collector 'maintained' – *i.e.,* actually

employed or implemented – procedures to avoid errors; and, second,

whether the procedures were 'reasonably adapted' to avoid the specific error

at issue." *Id*. (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir.

2006)).

The lower court's initial basis for rejecting the BFE defense was that

JRL continued to prosecute this time-barred collection case for four

additional months after August 6, 2007, when it received unambiguous,

27

unimpeachable, and direct notice that the debt was in fact time-barred. (Dk. 75, ER 1, at 10-14; Dk. 96 ER 2, at 27-30).

The lower court applied the rule illustrated in *Thompson v. D.A.N. Joint Venture III, L.P.*, 2007 WL 1625926 (M.D.Ala. June 5, 2007). *Id.* There, the debt collector also filed a time-barred state court collection suit, claiming (as JRL does here) an "honest belief the debt was not time-barred." 2007 WL 1625926, *2. The federal court entered summary judgment "holding Defendant's civil action was filed after the statute of limitations expired and thus violated the Federal Debt Collection Practices Act." *Id.* at *1. Four months later the court denied the collector's BFE defense, stating:

> Even if Defendant had a[n] honest belief the debt was not time-barred, Defendant DAN was on notice after the summary judgment opinion the debt was barred by the statute of limitations. Despite the summary judgment opinion, Defendant admits they have taken no action whatsoever to date to set aside the default judgment rendered in the underlying state action. <u>Thus, in the extreme light most favorable to Defendant, what may have begun as an unintentional act converted into a willful act... To be clear and certain, the Court finds the actions by Defendant DAN were intentional and not the result of bona fide error.</u>

*Id.* at *2 (emphasis added).

This rule – that a debt collector who fails to correct an otherwise unintentional FDCPA violation once on notice will have necessarily engaged in intentional misconduct which the BFE defense cannot excuse – has been applied and confirmed in other FDCPA contexts. *See Elder v. David J.*

28

*Gold, P.C.*, 2009 WL 2580320, *3 (W.D.N.Y. August 18, 2009) (rejecting BFE defense where the collector continued to litigate a collection suit once notified that it was filed in a prohibited, distant venue); *Canady v. Wisenbaker Law Offices, P.C.*, 372 F.Supp.2d 1379, 1384 (N.D.Ga. 2005) (same); *Sprinkle v. SB&C Ltd*., 472 F.Supp.2d 1235, 1239, 1246-47 (W.D.Wash. 2006) (entering summary judgment on FDCPA liability and rejecting BFE defense where the debt collectors failed to release an unlawful garnishment taken in violation of Servicemembers Civil Relief Act after they were made aware of the consumer's military status); *compare, Thompson v. Crown Asset Management, LLC*, 2009 WL 3059123, *2 (D.Ariz. September 23, 2009) (granting summary judgment for the collector on the BFE defense when, inter alia, the defendant "immediately corrected the error" once notified). The rule is consistent with other similar legal tenets. *See e.g. Seymour v. Summa Vista Cinema, Inc*., 809 F.2d 1385, 1388 (9th Cir. 1987) (finding culpability where misbehavior was ratified "through knowledge and failure to act"), and Am. Jur. Corporations § 1432 ("[A] ratification relates back to the initial unauthorized action.")

JRL ignores these facts as well as this entire aspect of the ruling below and does not contest entry of summary judgment on this continuing-wrong basis. Accordingly, the holding must be affirmed. *Gravquick A/S v.*

*Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1225 (9th Cir. 2003) (affirming grant of summary judgment "[i]n the absence of any argument or authority supporting reversal").

### 2. JRL's Reliance on CACV Was Unreasonable as a Matter of Law

JRL's actual challenge to the summary judgment ruling is moot since its liability for the same misconduct must be affirmed, as stated in the previous subsection. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996) ("Summary judgment may be affirmed on any ground supported by the record.") JRL's current position, even if correct, would not alter the above conclusion that the BFE defense is unavailable because JRL's actions were intentional. A debt collector's failure to meet any one of the BFE elements is, after all, "fatal to the defense." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009).

Nevertheless, the lower court's alternate holding is also incontrovertible. The record established that JRL's assessment of the initial information provided by CACV revealed that that the debt was time-barred. However, JRL abandoned the results of its own review and proceeded based only on CACV's unsubstantiated assertion that a purported partial payment on June 30, 2004, had revived the statute of limitations. Thus, JRL claims

that summary judgment against it was precluded by the disputed issue whether its reliance on CACV during that period was reasonable, at least until it received the August 6, 2007, email from CACV disclosing its error.

The evidence, however, proved that JRL's reliance on CACV's email was unreasonable as a matter of law. JRL had already experienced "problems" with the "batch" of CACV debts that included Mr. McCollough's account. Even if JRL had not been aware of those problems, *Reichert* required the lower court to reject such mere reliance as the basis for the BFE defense, since this Court explicitly held that "[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." 531 F.3d at 1007. Still, JRL could not make even this deficient claim of reasonable reliance based on an unblemished history with CACV sending accurate information, since the evidence showed that the current batch of accounts itself had already been recognized as "problematic."

The summary judgment record here reveals deficiencies in addition to the type identified in *Reichert*. First, JRL had in its possession the paperless file that clearly showed the entry for June 30, 2004. The notation for that date not only did not confirm CACV's phantom partial payment, but

31

affirmatively disclosed that "unused costs" had been returned and thus refuted CACV's partial payment misrepresentation. Anyone at JRL who simply glanced at the entry for June 30, 2004, would have noticed the discrepancy and in the exercise of a modicum of care at least could have accepted CACV's offer in the same email to provide supporting information.

Perhaps most damning is the fact that the CACV placement contract expressly disclaimed "the accuracy or validity of data provided," and JRL agreed that it instead was "responsible to determine [its] legal and ethical ability to collect" the account. JRL's reliance on CACV in the face of this disclaimer was therefore unreasonable as a matter of law. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805 (7th Cir. 2009) (collector's reliance on a trade association pamphlet in support of the BFE defense was unreasonable where "the pamphlet specifically disclaims that it is providing legal advice, and directs the reader to consult an attorney before taking any action"); *see generally MBIA Ins. Corp. v. Royal Indem. Co*., 426 F.3d 204, 213 (3d Cir. 2005) ("Royal's disclaimer of reliance on the former's representations made it unreasonable as a matter of law for it to rely on the representations of the latter"). JRL has never suggested that the disclaimer was in any manner ineffective; this contract provision alone eliminates any basis for JRL to claim reasonable reliance. *Hatfield v. Board of County Com'rs for Converse*

*County*, 52 F.3d 858, 866-67 (10th Cir. 1995) ("Having held that the disclaimer signed by plaintiff was sufficiently conspicuous and unambiguous, any reliance by plaintiff on subsequent assurances from County officials was unreasonable as a matter of law").

JRL states that its preventive procedures were adequate because it set up a system to flag potential statute of limitations problems. (Appellant's Brief, at 20-22, 25). However, the error which occurred here was not, as JRL frames its argument, that it failed to "catch time-barred cases." (*Id*. at 21). To the contrary, JRL did determine that this debt was beyond the statute of limitations; for that reason the account manager sent the original letter asking for documentation that might extend the limitations period. JRL's error – and the reason for its liability – was its acceptance of CACV's unsubstantiated assurance that the statute of limitations had been extended.

This Court, as all others, has instructed that the procedures that support a valid BFE defense must be those that "were 'reasonably adapted' to avoid the specific error at issue." *Reichert*, 531 F.3d at 1006 (citing *Johnson v. Riddle, supra*, and *Wilhelm v. Credico, Inc.,* 519 F.3d 416, 421 (8th Cir. 2008). Preventive procedures of a general nature or those directed at another potential error are not pertinent. *Valencia v. Affiliated Group, Inc*., 2008 WL 4372895, *4 (S.D.Fla. September 24, 2008 ); Hepsen v. J.C.*

*Christensen and Associates, Inc.*, 2009 WL 3064865, *7 (M.D.Fla.

September 22, 2009)  Thus, JRL's criticism of the lower court's comparison

of these facts to those in *Reichert*, its objection to the court's assessment that

"JRL did less than did the debt collector in *Reichert,*" and its disapproval of

the court's conclusion that "JRL's procedures are not reasonably adapted to

avoid the specific error in question here" are groundless.  (Dk. 96, ER 2, at

26).


3. **The Lower Court Correctly Entered Summary Judgment Against JRL For Submitting Requests for Admission After It Had Conclusive Knowledge That the Debt Was Time-Barred**

JRL's other assignment of error is the lower court's holding that it

violated the FDCPA by submitting requests for admission in the time-barred

action.  JRL does not raise the BFE defense with regard to this violation.  Its

objections appear to be twofold: the requests made no affirmative

misrepresentations, and there was no showing that its conduct violated state

court Rule 11.  Both protestations are immaterial at best.[5]

---

[5]  JRL's argument here ignores the fact that its misconduct of submitting the requests for admission on a known time-barred debt must be sustained on either or both of the grounds discussed above, thus eliminating any need for this Court to review the decision below on another basis.

The plain language of §§ 1692e and 1692f refute JRL's stated need for a misrepresentation. Section 1692f references no representations at all, only "unfair and unconscionable means" of collection. In addition to a "false…representation," § 1692e also prohibits "deceptive[ ] or misleading…means" to collect a debt. Giving effect to the different language used in § 1692e and § 1692f and to Congress's choice of words within § 1692e is of course essential, not only to fulfill legislative intent but to avoid rendering any of its handiwork superfluous. *Bailey v. U.S.*, 516 U.S. 137, 145-46 (1995). As the lower court held, Congress clearly imposed no false representation limitation on conduct to constitute an FDCPA violation. (Dk. 96, ER 2, at 17).

JRL supports its invocation of state court Rule 11 to excuse its FDCPA violations with no authority suggesting a connection between the two standards. There is none. To the contrary, the mere possibility that state law might actually permit JRL's misbehavior explains, rather than excuses, why its misuse of the state court system violates the FDCPA: Congress enacted the FDCPA expressly because "[e]xisting laws and procedures for redressing these injuries [personal bankruptcies, marital instability, the loss of jobs, and invasions of individual privacy] are inadequate to protect consumers." § 1692(a) and (b).

So, for example, the FDCPA violation for suing beyond the statute of limitations is in derogation of state law rules that enable the violation by deeming the defense waived if not affirmatively pled. *See Kimber*, 668 F.Supp. at 1488 ("FFC asserts, nevertheless, that because a statute of limitations is an affirmative defense which is waived if not raised, a plaintiff may not be penalized for knowingly filing a time-barred suit"). The entirety of § 1692i prohibiting debt collectors from filing suit in distant or inconvenient forums "preempts state law venue provisions." *Harrington v. CACV of Colorado, LLC*, 508 F.Supp.2d 128, 134 (D.Mass. 2007) (quotation omitted) citing, inter alia, *Fox v. Citicorp Credit Services, Inc*., 15 F.3d 1507, 1515 (9th Cir. 1994). Other statutory examples abound. *See generally*, 15 U.S.C. § 1692n (FDCPA preempts state laws "to the extent that those laws are inconsistent with any provision of this subchapter.") JRL's dubious reliance on state Rule 11 is irrelevant.

### 4. JRL's Unlawful Attempt to Collect Attorney's Fees Establishes its Violation of the FDCPA

The lower court held that attorney's fees were not authorized under applicable law or by a contract creating the debt and thus JRL's request for such fees in the collection suit violated § 1692e(2) and § 1692f(1). (Dk. 75,

ER 1, at 15-18). JRL did not raise below and does not assert now that its resulting FDCPA violations can be excused by the BFE defense.

JRL violated two FDCPA provisions that specifically protect consumers from any attempt by a debt collector to impose any unlawful charge or fee. *See e.g. Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (overcharges allegedly violated both § 1692e(2) and § 1692f(1)); *Rowe v. Educational Credit Management Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998) (same).

Section 1692e(2) states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section ...
>
> (2) The false representation of-
>
> (A) the character, amount, or legal status of any debt; or
>
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

Section 1692f(1) provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount

is expressly authorized by the agreement creating the debt or permitted by law.

These provisions impose strict liability without regard to intent or knowledge. This Court applied this strict liability standard in *Reichert* regarding the violation of § 1692f(1) arising from the debt collector's imposition, as here, of an unlawful charge for attorney's fees (531 F.3d at 1005-06), and in *Clark v. Capital Credit & Collection Services, Inc.,* regarding the collector's violation of § 1692e(2) for misstating the account balance. 460 F.3d 1162, 1174-77 (9th Cir. 2006). This Court recently reaffirmed this principle:

> Seeking somewhat to level the playing field between debtors and debt collectors, the FDCPA prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices. The FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional.

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

The lower court's review of state law demonstrated that Montana statutes contain no authorization for an award of attorney's fees to JRL or its client and that such entitlement, if any, must be contractual. (Dk. 75, ER 1, at 15-17). JRL does not dispute the lower court's analysis or holding. Since JRL had presented no admissible evidence of a contract with Mr.

McCollough authorizing an award of attorney's fees, the court entered the summary judgment to which JRL now objects. (Dk. 75, ER 1, at 17-18).

JRL appears to be saying that the lower court erred by refusing its proffer of a credit card agreement that contains a provision authorizing an award of fees. (Appellant's Brief, at 31-32). The court rejected that agreement under the mandate of Rule 56(e) and the instructions from this Court exemplified by *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002): "In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56(e)." (footnote and internal quotation omitted). (Dk. 75, ER 1, at 17).

The lower court refused the proffered agreement, as required, because it was not authenticated and thus failed the Rule 56(e) and *Orr* test. (*Id*.).[6] The lower court also rested its decision on the fact that JRL's discovery responses through which it attempted to introduce the document were not answered under oath. (*Id*. at n.3). In addition, JRL did not explain the facial impossibility that the agreement was Mr. McCollough's, since it is dated

---

[6] JRL accuses the lower court of "ignor[ing]" the agreement. (Appellant's Brief, at 32). The court did not ignore the agreement; it excluded the agreement in accordance with the rules of evidence and civil procedure and provided a written ruling that JRL now disregards.

April 2002, long after he and Chase parted ways.[7]  (Dk. 51, ER 19, Ex. G, page 1, upper left corner).  Moreover, by its own terms in the very first paragraph, the agreement only applies to "billing cycles beginning on and after May 9, 2002."[8]  (*Id.*)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment;" furthermore, "[t]he district court's exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion."  *Orr*, 285 F.3d at 773.  The lower court's exercise of discretion here was eminently sound.  In fact, JRL does not now dispute any of the bases on which the lower court ruled, and the entry of summary judgment on this issue must be affirmed.

Rather than address the actual FDCPA violation for which the summary judgment entered, JRL devotes its attention to refuting a violation that the lower court never addressed.  JRL argues extensively that it did not commit the non-violation described in *Harvey v. Great Seneca Financial. Corp.*, 453 F.3d 324 (6th Cir. 2006), holding that debt collectors do not

---

[7]  Mr. Dendy, when confronted with this fact at trial, testified that he had not noticed the discrepancy.  (Transcript Vol. II, ER V, at 281).

[8]  Even now, the provenance of the proffered credit card agreement is still a mystery.  For example, not only does the agreement not identify Mr. McCollough or any other cardholder, but it does not even identify Chase as the creditor.  The lower court commented on this mystery.  (Dk. 96, ER 2, at 20, n.3).

violate the FDCPA by filing a debt collection lawsuit without contemporaneously having the immediate means of proving the debt. (Appellant's Brief, at 27-32). The plaintiff in *Harvey* did not argue § 1692e(2) and § 1692f(1) violations at all but merely claimed that such a failure to have proof of the debt in hand when filing suit was itself an abusive and deceptive practice. The Sixth Circuit rejected the argument.

In defining the issue before it, the *Harvey* court expressly made the distinction that JRL is ignoring: "whether … (1) Seneca and Javitch filed the complaint without *having on hand at the time of filing* the means to prove the complaint, or (2) Seneca and Javitch filed the complaint without the means of *ever being able to obtain sufficient proof* of the debt-collection action." 453 F.3d at 327-28 (emphasis in original). The Sixth Circuit stressed that it was only addressing this first issue that JRL insists on injecting here and not the second issue that this case actually presents. Indeed, this distinction was a basis for the Sixth Circuit's ultimate holding:

> Harvey never … claim[ed] that Seneca and Javitch misstated or misrepresented the amount that she owed. Her allegations against Seneca and Javitch therefore do not allege that Seneca and Javitch made "false representations" or used means that were "deceptive" in the traditional sense.

453 F.3d at 332.

Subsequent cases have emphasized this distinction in recognizing that the types of § 1692e(2) and § 1692f(1) violations as are presented here remain viable and are unaffected by *Harvey*. *See e.g. Delawder v. Platinum Financial Services Corp.*, 2007 WL 1245848, *1 (S.D.Ohio April 27, 2007) ("The *Harvey* case differs factually from the instant case wherein Plaintiff alleges that Defendants attempted to collect an amount in excess of the amount that Plaintiff may have owed or that Defendant could lawfully collect and that Defendants attached a false affidavit to the complaint filed in the state court debt-collection suit"); *Gigli v. Palisades Collection, L.L.C.*, 2008 WL 3853295, *8 (M.D.Pa. August 14, 2008) ("But in this case, and contrary to Defendants' assertions, Ms. Gigli's FDCPA claims are not based on Defendants' filing of a debt collection action, refusing to provide upon request substantiating documentation, and then dismissing the action. Rather, she has averred that the complaint filed in the underlying action falsely represented the character, amount, or status of a debt and sought to collect amounts not authorized by an agreement"); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F.Supp.2d 1016, 1021-23 (S.D.Ohio 2007) (same). JRL's insistence on arguing the *Harvey* non-issue illustrates that the

lower court correctly resolved the issue that it did decide.[9]

JRL's remaining comments seem simply to invoke an intent or knowledge element that strict liability forecloses. For example, JRL states that "it is not at all unreasonable for a debt collector to routinely include such a request in the prayer for relief, knowing that verification will generally be readily accessible." (Appellant's Brief, at 30). The reasonableness of JRL's overreaching would have been an issue if JRL invoked the BFE defense as to this violation. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d at 1353 ("To be considered a bona fide error, the debt collector's mistake must be objectively reasonable.") JRL understandably has not raised the BFE defense, and its resulting liability is patent.

---

[9] In pressing its position, JRL misrepresents the proceedings below and lower court's holding, stating without citation that "the district court erred in holding that JRL violated the FDCPA by requesting attorney's fees without having a copy of McCollough's cardholder agreement in its possession at the time it filed the complaint." (Appellant's Brief, at 31).

**C. The Lower Court Properly Refused to Add to the Montana UTPA/CPA a Requirement of a Direct Contractual Relationship Between The Consumer and the Defendant[10]**

The lower court rejected JRL's argument that the Montana UTPA/CPA "requires[s] McCollough to have a consumer relationship with JRL." (Dk. 96, ER 2, at 7). A qualifying contractual transaction is indeed an element of the Montana UTPA/CPA based on its definition of a "consumer" in Mont. Code Ann. § 30-14-103. JRL does not dispute the lower court's holding that lending money and collecting the resulting debt is such a qualifying contractual transaction. (Dk. 96, ER 2, at 8).

JRL claims only that it cannot be liable under the Montana UTPA/CPA because it was not a party to that contract. (Appellant's Brief, at 48). JRL concedes that the plain language of the Montana UTPA/CPA does not impose the limitation that it requests but proposes that "the CPA, by its nature as a consumer protection statute, must be read to require some such relationship." (*Id.*)

---

[10] The lower court's decision to not treble the jury's award of actual damages may have eliminated any unresolved case or controversy regarding the Montana UTPA/CPA, whose remaining remedies of actual damages and reasonable attorney's fees have been awarded to Mr. McCollough under the FDCPA. So long as this relief is affirmed under the FDCPA, considering the same duplicative relief under state law would be an academic exercise that this Court eschews when "the parties lack a cognizable interest in the outcome of the suit." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056 (9th Cir. 2007) (quotation and citations omitted).

Nothing supports JRL's proposition. First, the argument that this law should be narrowed is the opposite of the Montana Supreme Court's approach: "The Montana CPA is broad in scope and should not be narrowly construed." *Baird v. Norwest Bank*, 255 Mont. 317, 327, 843 P.2d 327, 333 (1993). Accordingly, this Court should affirm the ruling below because of the inclusive plain language and the absence of the limitation that JRL seeks to impose.

Nevertheless, addressing JRL's argument, the supposed policy consideration that it trumpets to require a direct contractual relationship is the following:

> A debt collection law firm is not in any position to protect individuals who are not consumers of its services. Nor can a law firm prevent consumer abuses of individuals who are not its consumers.

(Appellant's Brief, at 49).

The illogic of that assertion is dramatically illustrated by JRL's own misconduct here. At every step in this case it was JRL alone that had the power and ability to inflict or prevent the abuse to which it subjected Mr. McCollough. JRL's mere assertion of this statement reveals its speciousness.

As the lower court observed, other jurisdictions have rejected the same attempts to limit coverage of their consumer protection acts in the

same manner as JRL is proposing. (Dk. 96, ER 2, at 9-10). More important, as the lower court also noted, two other federal courts in the District of Montana have also rejected JRL's arguments. (*Id*. at 8-9). JRL has not suggested any ambiguity in the Montana statute; the Montana legislature failed to enact the exception that JRL asks this Court to impose; and the Montana Supreme Court has expressly cautioned against the narrow construction that JRL seeks. Since the statute is clear and the policy reasons on which JRL relies are unfounded, there is no basis to re-write the Montana statute or to reverse the lower court's decision.

**D.    JRL Has Shown No Abuse of Discretion, Legal Prejudice, or Error in the Trial Court's Evidentiary Rulings**

**1.    The Trial Court Properly Admitted the Testimony of Mr. Lucero and Ms. Henan**

Mr. Lucero and Ms. Henan each testified about JRL's filing of collection suits against them. The trial court limited their testimony to their own experiences and made clear that their evidence was not to be used to show that JRL acted with malice toward Mr. McCollough. (Pretrial conference transcript, Dk. 194, ER 4, at 7-9). Both witnesses' testimony was brief. (Dk. 203, ER 9, at 8, n.2).

Ms. Henan testified that she was sued by JRL on a time-barred debt that she had stopped paying sixteen years earlier. (Transcript Vol. I, ER IV,

46

at 182-84).  She explained the embarrassment that she felt as a result and stated that JRL dismissed the case after she hired counsel to represent her. (*Id*. at 185-87).  On cross examination she admitted that she knew nothing about Mr. McCollough's case.  (*Id*. at 188).

Mr. Lucero testified that he too was sued by JRL.  (Transcript Vol. II, ER V, at 5).  He stated that JRL represented a plaintiff that purchased the debt from another entity from whom he had never borrowed money.  (*Id*. at 6-7).  He explained the worry and confusion that he felt and the process that he followed to file a pro se answer.  (*Id*. at 7-10).  While he himself understood little of what transpired ["I don't understand none of this court stuff"], his testimony established that he received requests for admissions and then a motion for summary judgment based on the resulting admissions and that he then called legal aid to represent him; JRL soon thereafter dropped the case.  (*Id*. at 10-17).  Cross examination elicited that Mr. Lucero knew nothing of Mr. McCollough's case, that in his case JRL was acting only as a lawyer on behalf of a client, and that Mr. Lucero agreed that "every client, including yourself, is entitled to have a lawyer when they go into court."  (*Id*. at 17-21).

The testimony of both witnesses was particularly relevant to contrast the ordinary reactions that anyone who believes himself wrongfully sued

feels with the demonstrable emotional distress for which the jury

compensated Mr. McCollough.  For example, JRL argued in closing that

there was "a complete lack of evidence that Mr. McCollough sustained any

damage by reason of the fact that he was a defendant in a lawsuit."

(Transcript Vol. III, ER VI, at 55).  Ms. Henan's and Mr. Lucero's testimony

helped illustrate the difference between the circumstances when JRL's

argument might have merit and those here where Mr. McCollough suffered

compensable injury.

These witnesses also gave the jury a glimpse of two other examples of

how the collection process operates.  For example, their testimony was

relevant to confirm that the confusion and difficulty that Mr. McCollough

testified he faced navigating the collection court process was not

idiosyncratic but was a typical and reasonable reaction that anyone in that

position might experience.

The minimal testimony from these two witnesses receives even more

minimal treatment now from JRL.  JRL summarizes their testimony in one

paragraph and asserts that the testimony was not relevant to any issue.

(Appellant's Brief, at 55, 59).  This challenge to their testimony is a far cry

from the showing of immateriality, legal prejudice, and significant adverse

consequences needed to establish an abuse of discretion to require the new

trial that JRL is now seeking. *Boyd v. City and County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009). In fact, JRL was able through cross examination to elicit testimony that fully supported its own trial strategy and goals.

2.   **JRL Has Shown No Error in the Admission of the Testimony of The Two Non-Medical Experts and of Plaintiff's Ex. 106**

a.   **The Evidence Was Relevant and Created No Undue Prejudice**

JRL focuses its principal evidentiary attack on the testimony of Mr. Michael Eakin and Mr. James Patten, the two local attorneys who provided expert opinions regarding JRL's business practices, and on the admission of Plaintiff's Ex. 106, a list documenting the some 2,700 collection cases that JRL filed in Montana during the specified 18 month period. All of this evidence was relevant to the question of blameworthiness that permeated multiple trial issues and was thus admissible. Fed.R.Evid. 402.

Pursuant to the FDCPA, Mr. McCollough had to prove that JRL's violations were "intentional" in order to recover the maximum statutory damages that the jury awarded. § 1692k(b)(1) (requiring "consider[ation of], among other relevant factors…the extent to which such noncompliance was intentional"). In addition, as discussed below, the claims of malicious

prosecution and abuse of process required proof of malice and willfulness. Furthermore, Mr. McCollough's entitlement to, and the amount of punitive damages were dependent on showing malice and other aspects of reprehensibility. JRL argued, as summarized above, that its misconduct was nothing more than a mistake.

To prove or disprove intent and mistake necessarily requires inquiry into JRL's conduct beyond its dealings with Mr. McCollough. *See e.g. Salmeron v. Highlands Ford Sales, Inc*., 220 F.R.D. 667, 671 (D.N.M. 2003) ("[I]t would be virtually impossible…[to] prove intentional behavior" without evidence of "other customers… [in order] to establish … [whether the defendant] acted intentionally and/or that [its] actions were part of a pattern or practice rather than the result of an innocent or isolated mistake.") Fed.R.Evid. 404(b) allows admission of such evidence precisely for this reason. *U.S. v. Curtin*, 489 F.3d 935, 943-45 (9th Cir. 2007) (providing comprehensive review of Rule 404(b)'s "rule of inclusion – not exclusion"). Indeed, JRL's invocation of *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), confirms this point since, as the trial court stated, "*State Farm* itself makes clear that similar conduct directed at others may properly be considered." (Dk. 203, ER 9, at 12).

Mr. Patten is a Montana lawyer with collection and bankruptcy experience. (Transcript Vol. II, ER V, at 23-26). He described the duties of lawyers to engage in reasonable pre-suit investigation and inquiry; and he testified that it was JRL's "factory" approach to the practice of law, rather than any mistake, that caused JRL to breach those duties and thus caused the violations here involving prosecuting the time-barred debt and pursing unlawful attorney's fees. (*Id*. at 30-33, 37, 39-40, 44-48, 56, 58-65, 90-95, 106, 110, 116-18). Significantly, as discussed below, on cross-examination and prior to the introduction or other mention of Plaintiff's Ex. 106, JRL questioned Mr. Patten by invoking the contents of that exhibit showing that JRL filed 2,700 collection complaints over 18 months. (*Id*. at 93). Mr. Patten responded by comparing his own high volume debt collection practice that properly supervised the use of form pleadings and the like to JRL's "mass-producing Complaints" with no supporting information or even the ability to prove its cases. (*Id*. at 90-95).

Mr. Eakin has 32 years experience practicing with Montana Legal Services as a consumer law attorney. (Transcript Vol. I, ER IV, at 142-43, 147-48). He testified about the rapid growth of debt-buyer lawsuits in Montana and of JRL's role in that trend; and he discussed his own experience with JRL's prosecuting lawsuits without supporting

documentation and pursuing judgments by default or based solely on the consumer's admissions on debts that would otherwise be barred by the statute of limitations. (*Id*. at 157-58, 160-66, 169-72).

During the testimony of attorney Lisa Lauinger, at the conclusion of Mr. McCollough's case, the trial court admitted into evidence Plaintiff's Ex. 106. (Transcript Vol. II, ER V, at 225). Ms. Lauinger confirmed the information in the exhibit that JRL had indeed filed some 2,700 over the recited 18 month period. (*Id*., at 226).

JRL's opening sentence of the pertinent section of its Brief states that "most of McCollough's claim did not require him to demonstrate a pattern and practice of behavior." (Appellant's Brief, at 52) (emphasis added). That statement acknowledges that some of his claims did require pattern and practice evidence and thus concedes the relevance of the evidence and its presumptive admissibility. *U.S. v. Curtin*, 489 F.3d at 943 (examining the interplay between Fed.R.Evid. 401 and 402). In any event, JRL's failure to mention the permissible uses of this evidence under Fed.R.Evid. 404(b) as discussed above, together with its insistence even now that it only acted "mistakenly" (Appellant's Brief, at 75), show that the trial court was well justified in admitting the evidence.

JRL's claim of prejudice also rings hollow. Fed.R.Evid. 403 requires JRL to show that the "probative value" of this evidence "is substantially outweighed" by its alleged "unfair prejudice." In addition, "this court's job is not to reengage in a balancing of the probative value and prejudicial effect" but only to determine "whether the district court abused its discretion when it engaged in the balancing process." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1418 (9th Cir. 1986). JRL ignores that inquiry and does not attempt to make the required showing. In any event, there is in fact no unfair prejudice here, only the natural effect that proof of JRL's inexcusable wrongdoing elicits rather than any "undue tendency" to create an improper decision. *U.S. v. McInnis,* 976 F.2d 1226, 1232 (9th Cir. 1992) (evidence tying the defendant to swastikas did not create unfair prejudice in view of its probative value in establishing a necessary element of the offense). JRL does not present a colorable claim of error.

### b.    JRL Failed to Preserve its Claims of Evidentiary Error

JRL's protest that the trial court did not instruct the jury to protect this evidence from misuse is also telling. First, by this argument JRL acknowledges that the evidence was relevant. Moreover, JRL did not comply with the procedure to present such an alleged error [Ninth Circuit

Rules 28-2.5 and 30-1.4(vi), (vi), and (ix)] or even to preserve the issue by requesting an appropriate instruction. *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 213 (9th Cir. 1988).

Next, the attached Docket No. 132 Order, dated April 1, 2009, which JRL excluded from its Excerpts of Record and fails even to acknowledge, conclusively establishes that JRL waived any objection to the non-medical experts' testimony. The trial court reserved any decision as to their qualifications or the admissibility of their testimony and instead denied JRL's Motion in Limine to Exclude Experts (Dk. 98, ER 24) "with leave to renew any objections at trial."[11] JRL then never renewed its objection, thus precluding appellate review:

> Absent a thorough examination of the objection raised in the motion in limine and an explicit and ultimate ruling by the district court that the evidence is admissible, a party does not preserve the issue of admissibility for appeal absent a contemporaneous objection.

*U.S. v. Archdale*, 229 F.3d 861, 864 (9th Cir. 2000).

---

[11] JRL's repeated representation to this Court that the lower court in its Order at ER 3 denied its motion in limine to preclude this expert testimony is false. (Appellant's Brief, at 4, 12). The April 1, 2009, Docket No. 132 Order expressly stated that its denial with leave to renew objections was in regard to JRL's "Court Doc. 98" motion "to exclude expert witnesses." The introductory recitation in the Order at ER 3 omitted any reference to the Docket No. 98 expert witness motion as among the "pending" motions under consideration.

JRL also waived its objections to Plaintiff's Ex. 106. As already mentioned, it was JRL that first used that evidence in its attempt to impeach Mr. Patten by comparing the volume of their respective debt collection practices. (Transcript Vol. II, ER V, at 93). In accordance with the rule of *Ohler v. U.S.,* 529 U.S. 753 (2000), JRL's preemptive use of the evidence before it was offered by Mr. McCollough waived its right to challenge its admissibility. *See U.S. v. Decoud*, 456 F.3d 996, 1011 (9th Cir. 2006) (applying the rule). Furthermore, once the trial court excluded its first three pages when the exhibit was accepted into evidence, JRL immediately withdrew its objection in front of the jury. (Transcript Vol. II, ER V, at 225, line 25).

**E.     The Jury's Findings of Liability for Malicious Prosecution and Abuse of Process Are Supported by Substantial Evidence[12]**

JRL does not deny that its pursuit of unlawful attorney's fees also supports the jury's verdict on both tort claims, as the trial court ruled. (Dk.

---

[12]   JRL argues that the trial court erred in denying both its motions for summary judgment and judgment as a matter of law addressing the malicious prosecution and abuse of process counts. Since the lower court denied the summary judgment motion on the sole basis of extant questions of fact for the jury (Dk. 96, ER 2, at 12-14), only the motion for judgment as a matter of law, and not the summary judgment ruling, is reviewable. *Lum v. City and County of Honolulu,* 963 F.2d 1167, 1169-70 and n.1 (9th Cir.1992).

203, ER 9, at 20-21). Absent challenge to that ruling, the verdict must be affirmed. *Gravquick A/S v. Trimble Navigation Intern. Ltd*., *supra*. Sustaining the jury's verdict on either tort claim under any theory eliminates any need for this Court to delve further. Nevertheless, Mr. McCollough is obliged to address JRL's various arguments.

Notwithstanding the overwhelming evidence of culpability presented to the jury, JRL insists that its misuse and abuse of the court processes only "showed that JRL mistakenly filed a time-barred suit." (Appellant's Brief, at 75). Rejecting this canard of a mere mistake resolves all of JRL's contentions regarding the tort claims.

JRL apparently does not dispute the trial court's summary of the controlling Montana tort law. (Dk. 96, ER 2, at 10-14). Its repetition here is therefore unnecessary. JRL merely contests the application of the facts to that law. Applying the facts under the substantial evidence standard reveals that the evidence supported the jury's factual findings that JRL acted without probable cause and with malice to support the malicious prosecution claim and that it acted willfully with an ulterior purpose to misuse the process of the state collection court to support the abuse of process claim.

Only by ignoring the record relevant to JRL's pursuit of unlawful attorney's fees can JRL claim that Mr. "McCollough did not present any

evidence that JRL filed the lawsuit to coerce him to do something that JRL knew McCollough was not required to do."  (Appellant's Brief, at 74-75). In this respect, JRL's sole purpose in filing the lawsuit was to coerce Mr. McCollough to pay fees to which it and its client were not entitled.  In addition, the evidence supports the conclusion that JRL knew that Mr. McCollough had no contractual fee obligation since it only assumed there was such a contract.  The sole evidence of any contractual obligation was Mr. McCollough's testimony that he had opened a credit card account with Chemical Bank years earlier, but Mr. Dendy admitted that he had never even seen a Chemical Bank credit card agreement.  (Transcript Vol. II, ER V, at 282).  These facts establish precisely the type of "use of the courts to file a baseless legal claim" that sustained the plaintiff's claim in *Seipel v. Olympic Coast Investments*, 2008 MT 237, ¶¶ 26-27, 344 Mont. 415, 188 P.3d 1027 (2008).

JRL makes its entire tortious misconduct argument regarding the statute of limitation abuse without once acknowledging the "smoking gun" CACV email admitting the partial payment error.[13]  The reason is plain:

---

[13]    JRL presents this appeal apparently based in part on a suggested communication gap among its employees.  *See e.g.* Appellant's Brief, at 7 ("Lauinger did not recall whether she provided this new ['smoking gun'] information to Charles Dendy").  However, all that is relevant in this regard is what JRL itself knew, not what any individual employee knew.  *See e.g.*

once it received that notice, JRL lost any ability to deny the jury's right to conclude, as it did, that the continued prosecution was done willfully and maliciously to coerce payment that it knew was not owing. JRL actually conceded in its questioning before the jury that "there has been some testimony" that Mr. Dendy's purpose in sending the requests for admission was "to torpedo Mr. McCollough's" defense of the lawsuit. (Transcript Vol. II, ER V, at 263). The evidence, illustrated by that "torpedo" admission, confirms that JRL committed both torts through its continued prosecution of the lawsuit after receiving the CACV email.

JRL's insistence that the evidence only showed that it mistakenly filed a time-barred suit is equally inconsistent with the evidence before it received the "smoking gun" CACV email. JRL knew as soon as Mr. McCollough's account was placed with it for collection that the statute of limitations had expired; the crucial June 30, 2004, entry appeared correctly all along in the JRL's paperless file as returned unused costs and not a payment; account manager Lauinger's initial letter to CACV itself requested supporting documentation "to extend the Statute of Limitations," yet none was forthcoming; attorney Lauinger ignored the offer in the reply email of

_John Q. Hammons Hotels, Inc. v. Acorn Window Systems, Inc._, 394 F.3d 607, 611 (8th Cir. 2005) (stating the rule that the knowledge of employees acting within the scope of their employment is imputed to the employer), citing, inter alia, Restatement (Second) of Agency § 9(3).

additional "info from me on this one" when she accepted the unsupported statement that the statute of limitations had been extended by the imaginary partial payment; JRL claimed to rely on CACV when CACV had expressly disclaimed the accuracy or validity of its account information and JRL agreed instead that it was responsible to determine its legal and ethical ability to collect the debt; JRL had already experienced problems with this batch of CACV debts;  and JRL continued to prosecute the collection case for four months after having been explicitly told that the June 30, 2004 payment never happened.  The jury understandably rejected JRL's plea to excuse its misconduct as a mistake.

The trial court properly rejected JRL's deficient factual argument: "JRL's argument in this regard is simply re-weighing the evidence rather than pointing to a lack of evidence."  (Dk. 203, ER 9, at 21).  At most, JRL is arguing that a contrary conclusion to the one drawn by the jury might have been possible; that argument is inconsequential.  *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir. 2002).  This Court determines only whether Mr. McCollough has presented sufficient evidence to support the jury's conclusion. *Id*.  Here, more than sufficient evidence was presented, and under these circumstances, "the jury's verdict must stand." *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1014 (9th Cir.1985)

(quotation and citation omitted); *accord*, *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021-23 (9th Cir. 2008).

**F.      Substantial Evidence Supports the Jury's Full Award of Actual Damages**

  **1.      JRL's Claim of a Heightened Montana Standard To Establish Emotional Distress Damages is Both Incorrect and Moot**

JRL's attack on the jury's award of actual damages is dependent on its argument that Montana law imposes a heightened "significant impact" standard of proof to compensate emotional distress injuries.  Even if true, that challenge ignores the fact that the FDCPA's own allowance for actual damages [§ 1692k(a)(1)] includes emotional distress damages. *Teng v. Metropolitan Retail Recovery Inc.*, 851 F.Supp. 61, 68-70 (E.D.N.Y. 1994) (collecting cases); *accord*, FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-50110, § 813-2, at 50109 (Dec. 13, 1988).  Furthermore, the trial court instructed the jury that FDCPA actual damages include "mental anguish and emotional distress" (Dk. 159, Instruction No. 32; Transcript Vol. III, ER VI, at 84-85), and JRL did not object to that aspect of the instruction.  (*Id*. at 14-15).

FDCPA emotional distress damages are available independent of any state law hurdles or heightened standards.  *Smith v. Law Offices of Mitchell*

*N. Kay*, 124 B.R. 182, 184-89 (D.Del. 1991); *see also, Cappetta v. GC Services Ltd. Partnership*, 654 F.Supp.2d 453, 464 (E.D.Va. 2009) (refusing "to apply state substantive law" to limit FDCPA remedies). The detailed personal and medical evidence, including Mr. McCollough's testimony of physical manifestations, exceeds the federal minimum to sustain the emotional distress award. *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222, 1235, 1239 (C.D.Cal. 2007) (denying post-trial motion for relief from $85,000 FDCPA emotional distress jury award), citing "*Zhang v. American Gem Seafoods,* 339 F.3d 1020, 1040 (9th Cir.2003) (upholding emotional damages based only on testimony); *Johnson v. Hale,* 13 F.3d 1351, 1352 (9th Cir.1994) (stating that emotional damages may be awarded based only on testimony or appropriate inference from circumstances)"; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 513 (9th Cir.2000) (holding that the Ninth Circuit does not require "objective" evidence of emotional damages). In any event, JRL does not challenge the jury's actual damage award under the FDCPA, and the verdict must therefore be sustained on that basis. *Gravquick A/S v. Trimble Navigation Intern. Ltd*., *supra.* Accordingly, whether the award is also available under the state claims is academic. *Molski v. Evergreen Dynasty Corp*., *supra.*

Nevertheless, the Montana Supreme Court has foreclosed JRL's argument. The "significant impact" standard that JRL references comes from language from an earlier case[14] that has been explicitly overruled by the Montana Supreme Court. In *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 66, 351 Mont. 464, 215 P.3d 649 (2009), the Court stated:

> We therefore hold that the "serious or severe" standard announced in *Sacco* applies only to independent claims of negligent or intentional infliction of emotional distress. To the extent our earlier cases, including *First Bank*, *Johnson*, and *Noonan*, suggest that a plaintiff must make a threshold showing of serious or severe emotional distress before a claim for parasitic emotional distress damages is allowed to go to the jury, we overrule those decisions. As for emotional distress that is claimed as an element of damage for an underlying tort claim (parasitic emotional distress damages), we hereby explicitly adopt the standard set forth in the Montana Pattern Jury Instruction (M.P.I.2d 25.02, 15.01-03)…

JRL relies on what it presents as a seemingly contrary quotation from *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 70, 353 Mont. 28, 50, 220 P.3d 1, 17 (2009). (Appellant's Brief, at 76-77). Claiming to quote from *Ammondson*, JRL represents to this Court that "the Montana Supreme Court has held that 'the proper standard'" to prove emotional distress claims is its purported "significant impact" test. *Id*. However, the quoted

---

[14] *Johnson v. Supersave Mkts.*, 211 Mont. 465, 473, 686 P.2d 209, 213 (1984) ("[i]n determining whether the distress is compensable absent a showing of physical or mental injury, we will look to whether tortious conduct results in a substantial invasion of a legally protected interest and causes a significant impact upon the person of plaintiff.")

*Ammondson* language merely said that it was the District Court in that case that "held" that the proper standard was the significant impact test when it attempted to reconcile the earlier cases prior to the intervening *Jacobsen* clarification. *Ammondson,* at ¶ 70. The Montana Supreme Court did not in any manner "hold" what JRL says; indeed, the *Ammondson* opinion then explicitly acknowledged the recent *Jacobsen* opinion that "properly state[d] the threshold required for derivative or parasitic (as opposed to stand-alone) emotional distress claims" and referred to the pattern instruction that was cited in *Jacobsen* and was given to the jury here (Dk. 159, Instruction No. 33; Transcript Vol. III, ER VI, at 85).[15] *Ammondson,* at ¶ 76.

### 2. The Trial Court Properly Refused to Disturb the Jury's Award

JRL's argument that substantial evidence does not support the damage award is based solely on application of its erroneous "significant impact" standard. (Appellant's Brief, at 83). Once that error is exposed and in light

---

[15] JRL's only objection to M.P.I.2d 25.02 was "that there isn't sufficient evidence to support a claim of emotional distress going to the jury," not its substance. (Transcript Vol. III, ER VI, at 15). JRL's own proposed instructions ignored the issue entirely. (Dk. 128, Defendant's Instruction No. 8). In fact, JRL does not appear to have proposed this heightened "significant impact" standard at all in the trial court and certainly has not shown in its Brief or Excerpts of Record that it did.

of its inapplicability to the FDCPA, nothing remains. JRL presents no basis to reverse the trial court's ruling.

Otherwise, JRL asserts at the conclusion of its Brief a boilerplate claim that the trial court should have remitted the actual damage award. It too is presented only as an extension of its "significant impact" argument (Appellant's Brief, at 85) and is fatally deficient on that basis alone.

The trial court's remittitur decision is reviewed for "an abuse of discretion," "allow[ing] substantial deference to a jury's finding of the appropriate amount of damages." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). JRL's skewed factual recitation is no basis to conclude that the award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Id*. To the contrary, Mr. McCollough's and Dr. Veraldi's testimony, succinctly summarized by the trial court in its post-trial Order (Dk. 203, ER 9, at 24-25), is more than sufficient to sustain the amount of the verdict.

Despite the applicable standard of review, JRL continues to attack Mr. McCollough's credibility. (Appellant's Brief, at 80). *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) ("We may not assess the credibility of witnesses in determining whether substantial evidence exists to

support the jury's verdict"). JRL also argues, as it did to the jury, that Mr. McCollough's damages reflect nothing more than his pre-existing condition. (Appellant's Brief, at 81). JRL's current arguments only confirm the trial court's conclusion in denying remittitur: "JRL has not provided the Court with any cases in which a substantial jury award for emotional distress damages was not upheld. Rather, JRL has provided only its own interpretation of the evidence." (Dk. 203, ER 9, at 25-26). As but one comparative example, JRL ignores *Seltzer v. Morton,* 2007 MT 62, 336 Mont. 225, 154 P.3d 561 (2007), where the Montana Supreme Court affirmed the jury's $1.1 million award for emotional distress and reputation damages against a defendant who committed malicious prosecution and abuse of process.

JRL's dissatisfaction with the result below is no basis to disturb the jury's verdict. JRL has only itself to blame. Its misconduct in this case was completely its own doing, and the legal and factual judgments entered against it are the natural consequences. Its unrelenting "deadbeat" defense of blaming the victim was unpersuasive; this lay jury intuitively understood what this Court articulated years ago in its initial FDCPA opinion: "whether a valid debt exists" is immaterial since "every individual, whether or not he owes the debt, has a right to be treated in a reasonable and civil manner."

*Baker v. G. C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (quotation and citation omitted).  And JRL's obfuscation before the jury and disingenuous presentation of evidence help explain why the jury discredited its version of the events.

## CONCLUSION

For the foregoing reasons, the judgment below should be affirmed, with costs and reasonable appellate attorneys' fees awarded to Mr. McCollough.

Respectfully submitted,

*/s/ Richard J. Rubin*
Richard J. Rubin
1300 Canyon Road
Santa Fe, New Mexico  87501
(505) 983-4418

John Heenan
Heenan Law Firm
3970 Avenue D, Suite A
Billings, Montana 59102
(406) 839-9091

Attorneys for Plaintiff-Appellee
Timothy McCollough

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, undersigned counsel declares that there are no known related cases pending in this Court.

## CERTIFICATION OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 09-35767

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Brief of Appellee complies with the type-volume limitation of Fed. R. App. P. 32(a)(5)and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 13,497 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Date: March 29, 2010            */s/ Richard J. Rubin*
                                 Richard J. Rubin

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2010, I electronically filed the foregoing Brief of Appellee with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, with service of copies to the following counsel using the appellate CM/ECF system, and on the same day, in accordance with Ninth Circuit Rule 30-1.7, mailed first class,

postage prepaid, four (4) copies of Appellee's supplemental excerpts of

record to the Clerk of the Court and one (1) copy thereof to the following

counsel:

> Fred Simpson, Esq.
> BOHYER SIMPSON & TRANEL, P.C.
> P. O. Box 7729
> Missoula, Montana 59807-7729

> By: */s/ Amber Smith*
> Amber Smith
> Legal Assistant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH, | CV-07-166-BLG-CSO |
| Plaintiff, | |
| | ORDER ON PENDING |
| vs. | MOTIONS and SETTING HEARING |
| JOHNSON, RODENBERG & LAUINGER, | |
| Defendant. | |

Pending before the court are the following motions.

(1) Motion in Limine to Exclude Expert Testimony, filed by Johnson, Rodenberg & Lauinger ("JRL");

(2) Motion in Limine to exclude other specified evidence, filed by JRL;

(3) Motion in Limine to exclude specified evidence, filed by McCollough;

(4) Motion for Reconsideration, filed by JRL.

-1-

I. <u>JRL Motion in Limine to Exclude Expert Testimony</u>

JRL seeks by this motion to exclude entirely the testimony of McCollough's two expert witnesses.  JRL argues:  (1) that no expert testimony is needed; (2) that neither expert is qualified to express the opinions they provide; (3) that they state impermissible legal conclusions; and (4) that their opinions are irrelevant based on this Court's Order dated January 8, 2009.

The motion will be denied, with leave for JRL to renew any objections at trial.  Although JRL is correct that opinions regarding liability under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., may be irrelevant in light of the Court's prior rulings, the issue of damages remains, as do all issues under the state law claims in the Amended Complaint.  See Court Doc. 23 at 8-10.  Some of the expert testimony could be relevant to factors McCollough must prove to prevail on these state law counts.  See generally <u>Seipel v. Olympic Coast Investments</u>, 344 Mont. 415, 418-21, 188 P.2d 1027, 1029-31 (2008) (identifying elements of causes of action for malicious prosecution and abuse of process).  Their testimony also may be

-2-

relevant to consideration of punitive damages.  See, e.g., <u>Philip Morris USA v. Williams</u>, 549 U.S. 346, 1063-64 (2007).  Other arguments made by JRL are more properly matters for cross-examination.

The Court notes that Mr. Eakin is primarily identified as a fact witness.  As such, he will be limited to those matters of which he has personal knowledge.  Where it is necessary for him to explain legal concepts so that his testimony can be understood by the jury, that will be allowed, provided proper disclosure was made.  No expert will be allowed to state impermissible legal conclusions.  Both experts will be limited to matters properly disclosed.  See Scheduling Order, Court Doc. 24 at 4.

## II.  JRL Motion For Reconsideration

JRL has filed a motion to reconsider the Court's prior order denying, with leave to renew, its motion to compel McCollough to produce a copy of McCollough's settlement agreement with CACV. Having reviewed the parties' briefs, the Court will order sealed production of the settlement agreement to the Court for in camera review.

Accordingly, IT IS HEREBY ORDERED as follows:

(1) JRL's motion in limine to exclude expert witnesses (Court Doc. 98) is DENIED, with leave to renew objections as trial.

(2) McCollough's counsel shall deliver to chambers on or before close of business on Friday, April 3, a copy of McCollough's settlement agreement with CACV for in camera review. The Court will reserve ruling on the Motion for Reconsideration (Court Doc. 106) pending such review.

(3) The Court will conduct a hearing on the parties' motions in limine (Court Docs. 100, 102), and issue rulings thereon, in conjunction with the Final Pretrial Conference, on April 7, 2009, at 9 AM in the James F. Battin Federal Courthouse, Billings, Montana.

DATED this 1st day of April, 2009.


/s/ *Carolyn S. Ostby*
Carolyn S. Ostby
U.S. Magistrate Judge